UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

NORMA GARZA,

    Plaintiff,

v.                                                                                         Civ. No. 18-1178 WJ/GJF

ANDREW SAUL, *Commissioner of*
*Social Security*,

    Defendant.

**PROPOSED FINDINGS AND**
**RECOMMENDED DISPOSITION**

THIS MATTER is before the Court upon Plaintiff Norma Jean Garza's "Motion to Reverse or Remand the Administrative Decision" [ECF 19] ("Motion"). The Motion is fully briefed. *See* ECFs 20 (Plaintiff's Supporting Memorandum), 24 (Commissioner's Response), 25 (Plaintiff's Reply). Having meticulously reviewed the entire record and the parties' briefing, the Court recommends that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant cause be **DISMISSED WITH PREJUDICE**.

**I.    FACTUAL BACKGROUND**

Plaintiff was born in 1959 and graduated from high school in 1978. Administrative Record (AR) 192, 204. She obtained a commercial driver's license and worked as a bus driver for the city of Albuquerque from January 1999 to February 2015. AR 46. She stopped working when, after asking a drunk man to leave the bus and the man began kicking the tires, she inadvertently ran over his legs—causing them to be amputated. AR 46, 163, 307. Approximately three months

later, in May 2015, she applied for social security disability benefits, claiming that she suffered from disabling "Depression and Anxiety (PTSD)." AR 68, 72.[1]

In November 2015, the Social Security Administration (SSA) denied Plaintiff's claim, concluding that, although she had "some limitations," such limitations "would not prevent [her] from performing past relevant work as [a] Bus driver." AR 79. In May 2016, upon her request for reconsideration, the SSA again denied her claims, concluding that she could *not* perform her past work—but that she could nevertheless "perform work that is less demanding." AR 96, 106. Plaintiff then requested a hearing, which was held in July 2017 before Administrative Law Judge (ALJ) Ann Farris. AR 41, 113. In December 2017, the ALJ concluded that Plaintiff was not disabled. AR 35.[2] In November 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR 1. Plaintiff timely petitioned this Court for relief in December 2018. Compl. [ECF 1].

## II. PLAINTIFF'S CLAIMS

Plaintiff asserts that, as a matter of law, the ALJ should have found her to be disabled. Compl. 2; Mem. 21-22. Specifically, she argues that the ALJ gave too little weight to those medical opinions that could have supported a finding of disability and too much weight to those

---

[1] Around this time, Plaintiff also applied for unemployment benefits—having represented that she was "able, available and actively seeking work"—and received benefit payments during the third and fourth quarters of 2015 and the first quarter of 2016 (totaling $8,352). AR 182, 189; New Mexico Workforce Connection, "Additional Information About Unemployment Benefits," available at www.jobs.state.nm.us (last viewed Dec. 30, 2019) (informing applicants that they must be "*able, available and actively seeking work* to remain eligible for unemployment benefits *during each week in which [they] claim benefits*" (emphasis added)); N.M. Stat. Ann. § 51-1-5(A)(3) (2019) (effective 1978) (providing unemployment benefits "only if the individual is *able* to work and is *available* for work and is *actively seeking* permanent full-time work or part-time work" (emphasis added)); *but see* AR 49, 55 (Plaintiff testifying that, although she believed she could not work, she nevertheless applied for unemployment benefits because she "needed the money" and "was totally broke"); ECF 6 (court denying Plaintiff's motion to proceed *in forma pauperis*, noting that she "received a net monthly income of $3,100 [from her husband's disability payments] and [was a] joint owner of a home worth approximately $250,000 and a 2017 Dodge Caravan worth an estimated $20,000"). In addition, Plaintiff applied for driving jobs during this time, and briefly worked as a driver in March 2017, although she testified in July 2017 that she could not perform such jobs. AR 48-49, 55.

[2] A more in-depth discussion of the ALJ's decision appears in Section IV, *infra*.

2

that did not. Mem. 7-13, 21-22. Plaintiff further contends that the ALJ's factual findings that relied on such weights—i.e., the findings that Plaintiff had no "listed impairments," that she had the capacity to work, and that she was not disabled—were therefore erroneous. Mem. 13-23; AR 19-34.

## III. APPLICABLE LAW

### A. Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

## B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that she "is not presently engaged in substantial gainful activity," (2) that she "has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[3] or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In her December 2017 written decision, the ALJ affirmed that she carefully considered "all the evidence" and "the entire record." AR 15, 17, 24.

---

[3] If the claimant can show that she has a listed impairment, she will be found to be disabled and no further steps will be analyzed. 20 C.F.R. § 404.1520(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id*.

5

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since February 2015, the alleged onset date of her disability. AR 17-18.[4] At step two, the ALJ found that Plaintiff had the following "severe" impairments: "Post Traumatic Stress Disorder [PTSD] and a mild neurocognitive disorder with anxiety." AR 18-19. The ALJ also considered Plaintiff's other impairments[5] but found them to be non-severe. *Id.* At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 19-24.

### B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's "residual functional capacity" (RFC).[6] Here, the ALJ found that Plaintiff had the RFC to "perform a full range of work at all exertional levels" with the following "nonexertional" limitations:

> [Plaintiff] should not be required to drive as part of her job duties; she is limited to medium work because of her age category; she is limited to making simple work-related decisions, and a workplace with few workplace changes; no interaction with the general public; only occasional and superficial interactions with coworkers.

AR 24. In discussing the evidence and reasoning that led to this RFC finding, the ALJ began by reviewing Plaintiff's allegations that her "anxiety, PTSD, and depression" prevent her from working. AR 25-26, 49. As set forth below, however, the ALJ found that Plaintiff's "statements

---

[4] Although Plaintiff received unemployment benefits in the last two quarters of 2015 and the first quarter of 2016, *see supra* note 1, such benefits "are not considered substantial or gainful activity under the regulations." AR 18. In addition, although Plaintiff admitted to working in March 2017 as a driver for a disabled person, her earnings "did not reach [substantial gainful activity] levels in 2017." AR 17-18.

[5] *E.g.*, hypothyroidism and "occasional" obesity. *Id.*

[6] *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 26.

   1. *Medical Evidence and Dr. Bakhtiar's Opinions*

The ALJ observed that "[t]he medical evidence of record show[ed] that [Plaintiff] was diagnosed with these conditions [i.e., depression and anxiety (PTSD)], and evidence[d] her treatment." AR 26. The evidence, however, "also show[ed] that [Plaintiff] was interested in leaving her position as a bus driver prior to the alleged [disability] onset date, and for different reasons." AR 26-27 (citing Plaintiff's diagnoses, on separate occasions around mid-2014, of vertigo, "non-cardiac chest pain," and hypothyroidism and Plaintiff's representation to a nurse that her job "[would] not find her light duty," along with that nurse's (unelaborated) notation that Plaintiff "[was] not able to work as a bus driver"). The ALJ also noted that, in August 2014, "her depression was reported as 'much better.'" AR 27.

The ALJ also observed that, on the day of Plaintiff's alleged disability onset date in February 2015, she was "assessed with anxiety related to work, and the plan was no work for two weeks." *Id.* The medical notes from two weeks later stated that she was still "scared of driving" and recommended "no work till seen by psych." *Id.* The psychiatrist, Parvaneh Bakhtiar, M.D., saw Plaintiff in early April 2015 and completed a leave application form, noting that Plaintiff's "period of incapacity [would] last only two to three months." *Id.* Approximately one month later, Dr. Bakhtiar also "completed what appear[ed] to be [a private] application for disability benefits . . . , stating that [Plaintiff] was '*totally* disabled' from April 1, 2015 through 'ongoing.'" *Id.* (emphasis added). The ALJ, however, gave no weight to this "medical opinion" because "it [was] not sufficiently well-explained, contain[ed] no factual support for its assertions, contradict[ed]

7

without explanation [Dr. Bakhtiar's previous] statements which estimated two to three months of incapacity and [was] based on three stated dates of treatment." *Id.*[7]

The ALJ also reviewed two subsequent opinions from Dr. Bakhtiar, from June 2015 and July 2016, that were completed to use as part of Plaintiff's SSA disability application. AR 31-32. These opinions consisted of a "questionnaire" form and a "mental residual functional capacity assessment" form and were "loosely based on outdated or misstated social security listing information." AR 31, 351-57, 391-97. Dr. Bakhtiar checked boxes (or circled answers) on these forms that classified Plaintiff as having, *inter alia*, (1) a "*complete* inability to function outside the area of [her] home," (2) "marked" limitations in all four "areas of mental functioning" ("understanding and memory," social functioning, "concentration, persistence or pace," and ability to adapt or manage herself), and (3) "three [qualifying] episodes of deterioration or decompensation in work or work like settings." AR 19-22, 31, 354-57, 394-97 (emphasis added).

Although the ALJ acknowledged that Dr. Bakhtiar was a "treating acceptable medical source," she nevertheless gave her opinions "little weight" because they were inconsistent with the evidence and contained "inadequate factual support:"

> Dr. Bakhtiar's opinions as to [Plaintiff's] limitations are clearly overstated throughout, and not consistent with the overall medical evidence of record, or even [Plaintiff's] testimony. . . . [Plaintiff's] testimony revealed that she goes to meetings on a weekly basis outside the home, and gets along with the people there. She attends medical appointments, and goes grocery shopping with her husband. [Plaintiff] applied for driving jobs in order to collect unemployment insurance benefits after the alleged onset of disability. All of these activities indicate that Dr. Bakhtiar's statement [that Plaintiff had a *complete* inability to function independently outside of her home] is incorrect . . . Similarly, Dr. Bakhtiar provided

---

[7] The ALJ also observed that "opinions on the ultimate issue as to whether [Plaintiff] is disabled for the purposes of her social security disability application is [sic] reserved to the Commissioner." *Id.*; *see also* 20 C.F.R. § 404.1527(d)(1).

no factual support for her assessment that [Plaintiff] has marked restrictions . . . or three [qualifying] episodes of deterioration or decompensation.

AR 31-32 (citing Plaintiff's testimony).

### 2. Mr. Heiskala's Opinions

The ALJ also reviewed three opinions, expressed on similar "questionnaire" forms, from a "non-acceptable medical source," Kevin Heiskala, a licensed clinical social worker. AR 19, 30-31. Mr. Heiskala's first opinion, from June 2016, classified Plaintiff as having, *inter alia*, "marked" limitations in *two* out of four areas of mental functioning (i.e., social functioning and "concentration, persistence or pace"). AR 30, 387-89. Mr. Heiskala's second opinion, from May 2017, classified Plaintiff has having *no* "marked" limitations in the four areas of mental functioning[8]—yet nevertheless asserted that she had only "minimal capacity to adapt to changes in environment or to demands that are not already part of daily life." AR 404. His third opinion, from six weeks later, however, classified Plaintiff as having *four* "marked" limitations in the four areas of mental functioning. AR 424.[9] Finally, each opinion included a mental RFC assessment section, each of which (as the ALJ noted) were inexplicably inconsistent with each other. AR 31.[10] The ALJ summarized her assessment of Mr. Heiskala's opinions as follows:

> [Mr. Heiskala's first opinion] did not state the basis for his assertions . . . . [His second opinion] [did] not explain the internal consistency of . . . [Plaintiff having]

---

[8] Specifically, he classified Plaintiff has having "mild" limitations in three categories ("understanding and memory," "concentration, persistence or pace," and her ability to adapt or manage herself) and has having "moderate" limitations in one category (social functioning). AR 404; *but see* AR 405-06 (RFC assessment section, rating Plaintiff as having "marked" limitations in two of eight *subsets* of "concentration and persistence," in one of five *subsets* of "social interaction," and in one of five *subsets* of "adaptation").

[9] The ALJ noted that this third opinion "was apparently originally created for [someone by the name of] 'Mr. Chavez'"—given what seemed to be an unsuccessful attempt to completely redact (by hand) Mr. Chavez's personal identifying information from the top of each page and replace it by writing in that of Plaintiff's. AR 31 (citing AR 424).

[10] *See also* AR 388-89 (first opinion's RFC assessment, classifying 17 out of 20 categories as "not ratable" (yet providing no explanation for such a classification), two as "markedly limited," and one as "moderately limited"), 405-06 (second opinion's RFC assessment, classifying 14 out of 20 categories as "not significantly limited," four as "markedly limited," and two as "moderately limited"), 425 (third opinion's RFC assessment, inexplicably missing the

9

only *mild* impairments in four broad areas of functioning [yet nevertheless having only "minimal capacity" to adapt to changes]. . . . [His third opinion] [was] a significant and unexplained change from the [second]. Similarly, the [mental RFC assessment], only one page of which [was] supplied, contain[ed] more severe assessed limitations, again without explanation.

AR 30-31 (emphasis added). Consequently, the ALJ gave "no weight" to Mr. Heiskala's opinions and explained her reasoning as follows:

> Because [Mr. Heiskala's] statements as to [Plaintiff's] impairments and limitations are *internally inconsistent*, because they are *not well-explained*, and *contain little factual support,* and because they are also *inconsistent with the medical evidence of record*, . . . I afford them no weight. [Plaintiff's] testimony alone indicates that she functions at a level higher than someone whose limitations are "marked" in severity.

AR 31 (emphasis added).

### 3. *Opinions of Drs. Wynne, Simon, and Raclaw*

The ALJ reviewed the opinion of a consultative psychologist, Louis Wynne, Ph.D., from October 2015. AR 28-29. After interviewing Plaintiff and performing a mental status examination, Dr. Wynne opined that Plaintiff had some mental limitations:

> She [could] read and understand basic written instructions[,] but her concentration and ability to persist at simple work tasks [were] at least moderately impaired. She could interact with the general public[,] but she would have difficulty interacting with her coworkers and her supervisors. She also might have difficulty adapting to changes in the workplace. She could recognize obvious hazards[,] but she could not manage her own benefit payments.

AR 367. The ALJ gave this opinion "moderate" weight and provided a number of reasons for doing so:

> I give moderate weight to Dr. Wynne' opinion, because he is an acceptable medical source, he examined the claimant, and his opinion is generally consistent with the medical record as a whole and supported with his observations. I cannot give his opinion greater weight, because he examined [Plaintiff] only once and did not examine all of the medical and other records in the electronic file. His opinion is

---

first page and thus including only the last nine categories—two of which changed from "not significantly limited" in the second opinion to "markedly limited" in the third opinion).

primarily based on [Plaintiff's] subjective reports, and I note that his opinion lacks detail as to the basis for his opinion on [Plaintiff's] limitations.

AR 29.

The ALJ also reviewed the opinion of state agency psychological consultant Sheri L. Simon, Ph.D., who examined the record at the initial disability determination level. AR 29-30, 74-78. At the reconsideration level, state agency psychological consultant Hillel Raclaw, Ph.D., reviewed this opinion and adopted it. AR 30, 90-94. These opinions reviewed Plaintiff's potential limitations within four general areas of mental functioning. AR 74-78, 90-94. In the first area, "understanding and memory," these doctors found moderate limitations in one out of three subcategories.[11] In the second area, "concentration and persistence," they found moderate limitations in three out of eight subcategories.[12] In the third area, "social interaction," they found moderate limitations in none of the five subcategories.[13] In the fourth area, adaptation, they found moderate limitations in one out of four subcategories.[14] "Overall," these doctors found that Plaintiff had the capacity to perform unskilled jobs "where interpersonal contact is routine but superficial." AR 77, 93, 95. The ALJ gave these opinions the "greatest weight"—given their consistency with the evidence, their objectivity, and their well-explained and well-supported assertions:

> Although they did not examine the claimant, they are state agency psychological experts familiar with Social Security Administration mental disability standards.

---

[11] *I.e.*, the ability to "understand and remember detailed instructions." AR 75, 91 (also finding no evidence of limitation in the other two subcategories).

[12] *I.e.*, the abilities to (1) "carry out detailed instructions," (2) "maintain attention and concentration for extended periods," and (3) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 75, 91 (also finding either no significant limitations or no evidence of limitations in the other five subcategories).

[13] All five subcategories had either no significant limitations or no evidence of limitations. AR 76, 91-92.

[14] *I.e.*, the ability to "respond appropriately to changes in the work setting." AR 76, 92 (also finding either no significant limitations or no evidence of limitations in the other three subcategories).

> Their opinions were based on an overview of the medical record and their opinions are overall consistent with the medical evidence of record. Given other opinions in this matter, most of which are internally inconsistent, overstated and inconsistent with [Plaintiff's] testimony and the medical record, the state agency psychological consultants provide a more reasonable, consistent and objective overview of the medical and opinion evidence. Their opinions are well-explained and well-supported factually.

AR 30.

### C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform her past relevant work as a bus driver "because it involves working with the public." AR 33. At step five, however, the ALJ found that Plaintiff was able to successfully adjust to "other work that exists in significant numbers in the national economy." AR 33-34.

## V. ANALYSIS

### A. The ALJ Did Not Err in Weighing the Opinion Evidence

Plaintiff argues that the ALJ erred by giving too little weight to opinions from three sources (i.e., the treating physician, Dr. Bakhtiar; the "non-acceptable" medical source, Mr. Heiskala; and the examining psychologist, Dr. Wynne) and too much weight to medical opinions from two sources (i.e., the non-examining state agency doctors, Drs. Simon and Raclaw). Mem. 7-13, 21-22. As explained below, this Court disagrees.

#### 1. Applicable Legal Standard

The weight that an ALJ gives to a medical opinion "will vary according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 404.1527(c)). For example, "[t]he ALJ is required to give controlling weight to the opinion of a treating physician"—but only if certain conditions are met. *Id.*[15] In contrast, "[t]he

---
[15] *I.e.*, if the opinion "[1] is supported by medically acceptable clinical and laboratory diagnostic techniques and [2] is not inconsistent with other substantial evidence in the record." *Id.* (citing § 404.1527(c)(2)). *See also Doyal v.*

12

opinion of an examining physician is *generally* entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (emphasis added) (citing § 404.1527(c)(1)-(2) (stating that the ALJ "[g]enerally" weighs these opinions in such manner)).

"[I]n determining what weight to give any medical opinion," the ALJ must "*consider* a series of [six] specific factors." *Hamlin*, 365 F.3d at 1215 (emphasis added) (citation omitted).[16] In *discussing* the weight she chose to give medical opinion, if "[t]he ALJ provided *good reasons*"—e.g., by making clear both "the weight" given and "the reasons for that weight"—then "[n]othing more was required." *Oldham*, 509 F.3d at 1258 (emphasis added) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527(c)(2)).[17]

*2. The ALJ Permissibly Gave Dr. Bakhtiar's Opinions "No Weight" and "Little Weight"*

Plaintiff argues that—because she met with her treating psychiatrist, Dr. Bakhtiar, "on a monthly basis for over one year" and because Dr. Bakhtiar's treatment notes "support[]" her opinion—Dr. Bakhtiar's opinion "was entitled to controlling weight." Mem. 8-9 (citing C.F.R. §404.1527). This Court disagrees.

---

*Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (observing that "[a]n ALJ may disregard a treating physician's opinion, however, if it is not so supported" (citation omitted)); *Knight v. Colvin*, 756 F.3d 1171, 1177 (10th Cir. 2014) (observing that an ALJ may "reject[] [a treating physician's] opinion completely" if she "give[s] specific, legitimate reasons for doing so").

[16] "Those factors are: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors." *Golden-Schubert v. Comm'r,* 773 Fed. Appx. 1042, 1046 n.2 (10th Cir. 2019) (unpublished) (citing 20 C.F.R. § 404.1527(c)).

[17] Although *Oldham*, 509 F.3d at 1258, involved only a *treating* source's medical opinion, "good reasons" are also required for opinions from medical sources that are *examining*, *non-examining*, and *non-acceptable*. *See Chapo*, 682 F.3d at 1291 (examining source's opinion requiring "specific, legitimate reasons" (internal quotation marks omitted)); *Golden-Schubert*, 773 Fed. Appx. at 1047-1050 (non-examining source's opinion requiring "good reasons" (internal quotation marks omitted)); *Mounts v. Astrue*, 479 Fed. Appx. 860, 865-66 (10th Cir. 2012) (unpublished) (non-acceptable medical source's opinion requiring "good reasons" (internal quotation marks omitted)).

The ALJ was not required to give controlling weight to any of Dr. Bakhtiar's opinions. Plaintiff, for example, cites to no "medically acceptable clinical and laboratory diagnostic techniques," *Hamlin*, 365 F.3d at 1215, that support Dr. Bakhtiar's April 2015 opinion that she was "totally disabled" or Dr. Bakhtiar's subsequent opinions that she had a "*complete* inability to function" outside the home, "marked" limitations in all four "areas of mental functioning," or "three [qualifying] episodes of deterioration or decompensation." *See* Mem. 8-9; Reply 2-3. And after meticulously reviewing the record, this Court is aware of no such evidence. *See* AR 311-425 (medical records). In addition, Plaintiff provides no explanation for how such opinions "[are] not inconsistent with other substantial evidence in the record," *Hamlin*, 365 F.3d at 1215. *See* Mem. 8-9; Reply 2-3. As explained in Section V(B) below, there *is* substantial evidence that Plaintiff is not as limited as Dr. Bakhtiar's opinions portray.

Furthermore, the ALJ gave "good reasons," *Oldham*, 509 F.3d at 1258, for giving "no weight" to Dr. Bakhtiar's April 2015 opinion that she was "totally disabled." *See supra* Section IV(B)(1) (quoting AR 27) (ALJ noting that the opinion was not well-explained, lacked factual support, was based on three dates of treatment, and inexplicably contradicted the doctor's previous estimates of two to three months of incapacity). The ALJ likewise gave good reasons for assigning "little weight" to Dr. Bakhtiar's subsequent opinions from June 2015 and July 2016. *See id.* (quoting AR 31-32) (ALJ noting that these opinions were inconsistent with the medical evidence, inconsistent with Plaintiff's testimony about her own abilities, and lacked factual support). Consequently, "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

### 3. *The ALJ Permissibly Gave Mr. Heiskala's Opinions "No Weight"*

Plaintiff argues that the opinion of the "non-acceptable" medical source, Mr. Heiskala, was "consistent with other evidence in the record" and therefore "should have been accorded

14

significant weight." Mem. 9-11 (citing Social Security Ruling (SSR) 06-03p, 71 Fed. Reg. 45593 (Aug. 9. 2006)[18]). This Court disagrees.

To begin, the assertion that—because some other piece of evidence could support a "non-acceptable" medical source's opinion—such an opinion "warrants significant weight" is incorrect. Mem. 9-10; *see* SSR 06-03p (reviewing the six factors that the ALJ generally considers and noting that "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case"); *supra* note 16 (list of the six specific factors). Instead, the question is whether the ALJ provided "good reasons," *Oldham*, 509 F.3d at 1258, for the weight she gave to these opinions. And the ALJ gave "good reasons" for assigning Mr. Heiskala's significantly inconsistent opinions "no weight." *See* Section IV(B)(2) (quoting AR 30-31) (ALJ explaining that Mr. Heiskala's opinions were (1) internally inconsistent, (2) inconsistent with each other, (3) inconsistent with the medical evidence, (4) inconsistent with Plaintiff's own testimony, (5) not well-explained, and (6) lacked factual support). Consequently, "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

*4. The ALJ Permissibly Gave Dr. Wynne's Opinion "Moderate Weight"*

Plaintiff argues that the ALJ erroneously failed to (1) give the opinion of the examining psychologist, Dr. Wynne, more than "moderate weight" or (2) apply that opinion to her RFC findings. Mem. 11-13; Reply 5. This Court disagrees.

To begin, the ALJ had "good reasons," *Oldham*, 509 F.3d at 1258, for assigning only "moderate weight" to Dr. Wynne's opinion that Plaintiff's "concentration and ability to persist . . . [were] at least moderately impaired," that she could "interact with the general public" (but

---

[18] SSR 06-03p was in effect at the time of the ALJ's decision, given that Plaintiff's claim was filed in May 2015. The SSA, however, rescinded this SSR "for claims filed *on or after* March 27, 2017." Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017) (emphasis added).

15

would have difficulty with coworkers or supervisors), and that she "might have difficulty adapting to changes in the workplace." AR 367. Although the ALJ noted that Dr. Wynne's opinion was "generally consistent with the medical record" and supported with his observations, he did not give it greater weight because he (1) examined Plaintiff only once, *see Robinson*, 366 F.3d at 1084 (observing that "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician"), (2) did not examine all of the medical and other records, (3) based his opinion primarily on Plaintiff's subjective reports, and (4) failed to provide "detail[s] as to the basis for his opinion." AR 29.[19] And in light of these "good reasons," "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

Finally, because the ALJ properly assigned "moderate weight" to this opinion, there is no requirement that she somehow incorporate the entire opinion (or at least those portions that are most favorable to Plaintiff) into her RFC finding, as Plaintiff seems to imply. *See* Mem. 12; Reply 3-4.[20] As mentioned, because the ALJ "provided good reasons" for the "moderate weight" that she gave to this opinion, "[n]othing more was required" (e.g., an explanation of how *every portion* of each opinion corresponds to an ALJ's RFC findings). *Oldham*, 509 F.3d at 1258.

*5. The ALJ Permissibly Gave "Greatest Weight" to the State Agency Doctors' Opinions*

Plaintiff argues that the "outdated opinions" of the non-examining state agency doctors "should have been given the least weight." Mem. 12-13 (citing 20 C.F.R. § 404.1527(c)). Again, this Court disagrees.

---

[19] Although, as Plaintiff notes, an ALJ should not discount an examining psychologist's opinion "*primarily* because it was based on [a claimant's] . . . subjective statements" *Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (unpublished) (emphasis added), the ALJ in this instance considered the psychologist's reliance on Plaintiff's statements as only one of four factors for assigning it "moderate weight." *See* Mem. 12; Reply 5.

[20] In fact, the ALJ's RFC finding *did* incorporate many of the limitations within this opinion (e.g., those regarding Plaintiff's interactions with the public and coworkers and regarding workplace changes)—with the main exception being the limitation regarding "concentration and [persistence]." *See* AR 24, 367.

16

As with the other opinions reviewed above, the ALJ likewise gave "good reasons" for giving the "greatest weight" to the opinions of Drs. Simon and Raclaw that Plaintiff had the capacity to work in unskilled jobs with limited social interaction: (1) they were experts that were familiar the SSA's mental disability standards, (2) they reviewed the medical record, (3) they provided "a more reasonable, consistent and objective overview" of the evidence, (4) their opinions were consistent with the evidence, (5) their opinions were well-explained, (6) their opinions were well-supported factually, and (as illustrated above) (7) most of the other opinions were "internally inconsistent, overstated and inconsistent with [Plaintiff's] testimony and the medical record." AR 30. Although such opinions are *generally* "entitled to the least weight of all, *Robinson v. Barnhart*, 366 F.3d at 1084, there is no rule precluding them from receiving greater weight than the opinions of treating or examining sources—particularly when, as here, there are both "good reasons" to give less weight to the opinions of the treating an examining sources, *see supra* Section V(A)(2)-(4), and "good reasons" to give greater weight to the opinions of these agency physicians. Consequently, given the "good reasons" for the weight given to these opinions, "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

**B. The ALJ's Findings Were Legally Sound and Supported by Substantial Evidence**

Given that the ALJ did not improperly weigh the opinion evidence, the remaining issues are easily resolved. *See also* Reply 5 (Plaintiff, after advocating for greater weight to the opinions from the first three sources discussed above, acknowledging that "all further analysis is dependent on consideration of this [opinion] evidence").

First, the ALJ's finding at step three that Plaintiff had no "listed impairment" was supported by substantial evidence. AR 19-24. At step three, the ALJ relied—not on the opinions of Dr. Bakhtiar or Mr. Heiskala—but on the opinions of Drs. Wynne, Simon, and Raclaw and Plaintiff's

17

own testimony. AR 22-23. As discussed above, the ALJ was not required to give more weight to the opinions of Dr. Bakhtiar or Mr. Heiskala or less weight to the opinions of Drs. Wynne, Simon, and Raclaw—and it is not this Court's role to "reweigh the evidence." *Newbold*, 718 F.3d at 1262; *see also Oldham*, 509 F.3d at 1257 (stating that courts may review "only the *sufficiency* of the evidence, not its weight"). Furthermore, the evidence that the ALJ relied on at step three (i.e., the opinions of Drs. Wynne, Simon, and Raclaw and Plaintiff's testimony) is "more than a mere scintilla" and therefore meets the substantial evidence "threshold for . . . evidentiary sufficiency." *Biestek*, 139 S. Ct. at 1154.

Second, the ALJ's RFC findings and her ultimate finding of no disability were supported by substantial evidence. The evidence on which the ALJ relied in making her RFC findings—including Plaintiff's testimony, the medical evidence, and the opinions of Drs. Wynne, Simon, and Raclaw—is likewise "more than a mere scintilla"—i.e., "such relevant evidence as a reasonable mind *might* accept as adequate to support [the ALJ's] conclusion" that Plaintiff could "perform a full range of [medium and unskilled] work" with certain "nonexertional" limitations (e.g., no driving, few workplace changes, and minimal social interaction). *Id.* (emphasis added). Consequently, in light of this RFC and the vocational expert's testimony at steps four and five, the latter of which was not challenged by Plaintiff,[21] the ALJ's findings at these steps—and her ultimate finding of no disability—are likewise supported by substantial evidence.

---

[21] Although Plaintiff argues that the ALJ should have incorporated the various assumptions within *Plaintiff's* hypothetical questions to the vocational expert, she does not assert that the actual testimony of this expert was inaccurate or unfounded. *See* Mem. 17-21.

Finally, the ALJ "consider[ed] all of the evidence," 20 C.F.R. § 404.1520(a)(3), and properly omitted from her RFC finding certain opined functional limitations—limitations that were expressed in the previously discounted opinions of Dr. Bakhtiar, Mr. Heiskala, and Dr. Wynne. Although Plaintiff asserts that the ALJ failed to *consider* such limitations, *See* Mem. 16-21,[22] she does not adequately explain how the ALJ would have failed to do so.[23] As discussed above, the ALJ thoroughly considered these individuals' opinions regarding Plaintiff's functional limitations—and properly assigned their opinions "no weight" (in the case of Dr. Bakhtiar's initial opinion and Mr. Heiskala opinions), "little weight" (in the case of Dr. Bakhtiar's subsequent opinions), and "moderate weight" (in the case of Dr. Wynne's opinion). *See* Section V(A)(2)-(4); AR 27-32; *see also Oldham*, 509 F.3d at 1258 (holding that, because the ALJ provided "good reasons" in weighing the medical opinions, "[n]othing more was required"). Instead, Plaintiff essentially seems to contend that the ALJ should have incorporated these *opined* limitations into "part of her residual functional capacity findings," Mem. 20—but such a contention "amount[s] to an argument that this court should reweigh the evidence, which we cannot do." *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing *Oldham*, 509 F.3d at 1257).

---

[22] Specifically, Plaintiff argues that the ALJ erred in "fail[ing] to consider all [of her] functional limitations," primarily the alleged "limitations in concentration and ability to maintain pace" that are contained within the previously discounted opinions of Dr. Bakhtiar, Mr. Heiskala, and Dr. Wynne. Mem. 16-21. Plaintiff also includes within her argument other functional limitations that are supported almost exclusively by Dr. Bakhtiar and Mr. Heiskala's previously discounted opinions—e.g., limitations related to "carrying out basic work procedures," "special supervision," and "maintain[ing] a regular work schedule." Mem. 18-19. (Although she cites to Dr. Wynne's assessment of "difficulty adapting to workplace changes" to support the "special supervision" limitation and Dr. Wynne's observation of Plaintiff's difficulty counting backwards from 100 by threes and a memory test to support the "carrying out basic work procedures" limitation, she cites to no finding from Dr. Wynne that directly endorses such limitations.)

[23] *See also* D.N.M. LR-Civ 7.1(a) (requiring a motion to "state with particularity the grounds and the relief sought" (emphasis added)); *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) ("perfunctory complaints failing to frame and develop an issue are not sufficient" (internal quotation marks omitted)); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (only considering issues "that have been adequately briefed for [the court's] review").

## VI. CONCLUSION

The ALJ applied the correct legal standards and her findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant cause be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.